leans, out of the proceeds of that vessel now in the registry of the court. The vessel had been originally proceeded against by Otto J. Eggers and others, owners of certain cargo which had been shipped on the vessel to be transported from this port to Gonives, Hayti, but which had been sold by the master of the vessel to raise money to pay sailors and repair the vessel, to enable her to depart from Turk's Island, where she had gone in distress, and reach her home port. To this action of the owners of the cargo no defence was interposed on the part of the owners of the vessel, and the vessel having been condemned by default, the proceeds were brought into the registry, and were insufficient in amount to satisfy the demand of the libellant Eggers. Before the distribution of the fund, however, the present petition was filed, and there being no real dispute as to the facts upon which the question of priority between the two demands must depend, in order to raise the question the petitioner moved, upon notice to the first libellant, for an order of short publication and for a stay of the distribution of the fund, and that the default as against the petitioner be opened.

T. D. Hall, for the application.
T. Scudder, in opposition.

## Case No. 5,703.

### The GRAPESHOT.

[2 Woods, 42.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1874.

BOTTOMRY BOND—INTEREST—PREMIUM.

1. When the supreme court reversed a decree in admiralty and remanded the cause to the circuit court, with instructions to render a decree against the ship for the amount found due for supplies and repairs actually furnished and really necessary, and the supplies and repairs were furnished upon a bottomry bond which entitled the libellants to a premium of 19½ per cent. for the voyage: *Held*, that such premium should be included in the amount to be decreed by the circuit court.

2. A bottomry bond contained no stipulation for ordinary interest, nevertheless it was *held*, that interest was recoverable at least from the date of the judicial demand.

3. Interest is not allowed in admiralty unless specially directed. but this rule so far as it governs the construction of the decrees of the supreme court only applies to cases where the decree of the court below in favor of libellant is affirmed. When such decree is reversed and the cause remanded, the circuit court may allow interest unless expressly forbidden to do so by the decree of the supreme court.

4. The fact that the ship against which the bottomry bond was asserted had been seized and sold or the libel, and the proceeds had remained for a long time in the registry of the court without producing interest, was no reason for refusing to allow interest on the sum found to be due.

This cause comes up for hearing on exceptions to the report of J. W. Gurley, master.

W. S. Benedict, for libellant.
James McConnell, for claimant.

WOODS, Circuit Judge. The libel was filed upon a bottomry bond for supplies and repairs furnished the bark at Rio in the spring of 1858. The cause had been once to the supreme court of the United States, which reversed the decision of the circuit court. The circuit court had rendered a decree for the entire sum secured by the bottomry bond. The supreme court was of opinion that some of the items in the bills secured by the bonds were not subjects of bottomry, and that the actual necessity for some of the supplies and repairs was not shown. That court, therefore, reversed the decision of the circuit court and remanded the cause with instructions, "To refer the account for supplies and repairs to one or more commissioners, experienced in commerce and of known intelligence and probity, to ascertain under the instructions of the court, what portion of the supplies and repairs actually furnished to the ship was really necessary; and for the amount thus as-

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

certained and approved by the court, to enter a decree for libellants." The parties selected Mr. J. W. Gurley as master, and the selection was approved by the court. The master took the testimony of but one witness, in addition to the evidence already in the record. This witness testified to facts which had occurred fourteen years before he gave his testimony, and the evidence in the rec-ord shows that he must have been mistaken in his statement of facts. The master concluded, and we think properly, that this new evidence did not substantially change the case as it appeared in the original record. The master reported that the principal sum due on the bond for supplies and repairs actually furnished the ship and really neces-sary, amounted to $4,392.25.

1. The first exception is to the amount of this allowance. The libellant claims that because Clark, the master of the vessel, was also a part owner, he was authorized to make a bottomry bond on the ship anywhere and for any reason. But it seems to me too late to review this question. If Clark was a part owner it must appear in the record, and the supreme court has decided that the whole bond cannot be sustained. It has, therefore, either found that Clark was not a part owner, or if he was, that he was not on that account authorized to make the bond unless there was a real necessity therefor. I regard this exception as raising a question already settled by the supreme court.

2. The second exception is, that the master did not allow the 19½ per cent. maritime interest on the $4,392.25 which was stipulat-ed for in the bond nor legal interest from and after the date of judicial demand, July 3, 1858. The master was not required to pass upon these questions. He has done what the order of reference required and no more. This exception must, therefore, be overruled, but this court will now determine the question for itself. In admiralty appeals, the supreme court never does allow interest as such. Hemmenway v. Fisher, 20 How. [61 U. S.] 255; Boyce's Ex'r v. Grundy, 9 Pet. [34 U. S.] 275; Phil. Pr. U. S. 260. When in the opinion of the court interest should be allowed, it is included in the decree as a gross sum. Now the supreme court has directed specifically for what sum the decree in this case shall be, to wit: The amount found due for supplies and repairs actually furnished and really necessary. The bottomry bond, which is the basis of the libel, expressly provides that the libellant shall be entitled to "a premium of 19½ per cent. for the voyage, in consideration whereof all risks of the sea, seizures, enemies. fires, pirates, etc., are to be on account of" libellants. By the terms of the bond, this premium is as much the due of the libellants as the prin-cipal sum loaned on the bond, and as there does not seem to have been any question raised in the supreme court of its allowance, if any part of the principal sum found was

recoverable, and it is not excluded by the decree of the supreme court, we must allow the premium on the amount actually found due by the master. But it is insisted strenu-ously that as neither the bottomry bond nor the decree of the supreme court says any-thing about the allowance of ordinary inter-est, none can be allowed. Does the fact that there is no stipulation for ordinary interest in the bond preclude this court from allow-ing interest from the commencement of the suit, before which time the bond, if anything at all was due on it, was payable? The general common law rule is that the law does not imply a contract on the part of the debt-or to pay interest on the sum he owes, al-though the debt may be of a fixed amount, and may have been frequently demanded. 2 Chit. Cont. (11th Am. Ed.) 950, and cases there cited. But according to the American authorities, interest will be allowed after a demand of payment, even of an unsettled claim, for goods sold and delivered or serv-ices rendered, from the time of the demand, and the presentment of an account or com-mencement of a suit is sufficient demand on which to found and from which to date a claim of interest. Barnard v. Bartholomew, 22 Pick. 291; McIlvaine v. Wilkins, 12 N. H. 481 et seq.; Selleck v. French, 1 Conn. 32; Gray v. Van Amringe, 2 Watts & S. 128; Goff v. Rehoboth, 2 Cush. 475. Interest is allowed on liquidated demands in the ad-miralty as well as at law. The Swallow [Case No. 13,665]. In suits for seamen's wages, interest is allowed from the time of demand, or if no demand be made, from the commencement of the suit. Gammel v. Skin-ner [Id. 5,210]; Sheppard v. Taylor, 5 Pet. [30 U. S.] 675.

These authorities settle the principle, and there can be no question that the libellants are entitled to ordinary interest on the amount properly loaned on the bottomry bond, at least from the commencement of the suit. But the claimant says that the ques-tion of interest has been ruled adversely to the libellant by the decree of the supreme court in this case. He says that the decree of the supreme court in this case—[The Grape-shot] 9 Wall. [76 U. S.] 145—directs this court to ascertain "what portion of the repairs and supplies actually furnished to the ship were really necessary, and for the amount thus ascertained and approved by the court, to enter a decree for the libellants." That as this direction of the court says nothing about interest, none can be allowed. To sustain this view we are referred to the cases of Boyce's Ex'r v. Grundy, 9 Pet. [34 U. S.] 290; Hemmenway v. Fisher, 20 How. [61 U. S.] 255; to rule 23, U. S. Sup. Ct. Rules; and to Phil. Pr. U. S. (Rev. Ed.) 257. The rule of the supreme court and these authorities ap-ply only to cases when the judgment or de-cree of the lower court has been affirmed. The holding is that unless the supreme court, in the affirmance of a judgment or decree,

allows interest, it cannot be allowed by the lower court, when called on to execute the mandate. But in the case of The Grapeshot [supra] the decree of the circuit court was reversed, and the cause sent back to the circuit court to ascertain the amount due libellants, and with instructions to render a decree for the amount so ascertained. The supreme court never passed upon the question of interest. It never disallowed interest. The libellants are clearly entitled to it unless it is expressly disallowed. As well might it be claimed that libellants are not entitled to their premium of 19½ per cent. which is expressly provided for in the bond, because the supreme court makes no mention of it in its order remanding the case to this court.

Claimant further says, that no interest should be allowed, because the ship was seized and sold in August, 1858, and ever since that date the proceeds of the sale have been in the registry of the court or in the United States treasury, and claimant has had no use of the funds. This is no answer to the libellant's demand for interest. The claimant might have saved himself this loss by paying what was due on the bond, or if he had tendered the amount now found to be due, he could not have been required to pay interest. The libellants have asserted their rights in the ordinary way, in a court of justice. They are not to be punished, because in the administration of the law the claimant has been subjected to loss, a loss which he might have avoided had he chosen to take the proper steps to avoid it.

3. The third exception is, that the master erred in his construction of the words "were really necessary," contained in the decree of the supreme court directing this court "to ascertain what portion of the supplies and repairs actually furnished were really necessary." "Necessity for repairs and supplies is proved when such circumstances of exigency are shown as would induce a prudent owner to order them." The Grapeshot, 9 Wall. [76 U. S.] 141. I have looked into the evidence in the record, and am not able to see that the master has been too strict in his construction of the words "really necessary." The fact is, he allows for all repairs which the evidence shows were actually made, and for all supplies actually furnished. This exception must be overruled.

The other exceptions refer to small items in the account which the master has rejected. The evidence seems fully to justify the findings of the master in respect to these items. My opinion is that none of the exceptions are well taken, and they must be overruled. In making up the amount of the decree, however, the premium of 19½ per cent. on the amount found due by the master will be allowed, and also interest at the rate of five per cent. per annum on the same amount from the date of judicial demand, to wit, July 3, 1858.